I don't want to belabor or go over the whole brief again. Obviously, the Court has read the briefs, but two points I do want to emphasize on the takings claim. The district court in granting summary judgment, I believe, made a fundamental error in equating the private takings claim with the facial takings claim. The private takings claim arises out of the public use clause of the Fifth and Fourteenth Amendments, as incorporated in the Fourteenth Amendments. The facial takings claim arises, or the jurisdictional requirements in the facial takings claim, arises out of the just compensation clause of that same amendment. In effect, wasn't the district court just saying, look, there wasn't an illegitimate motive here? The city didn't side with the private party. It doesn't apply. It did it. It did it to avert a nuisance and all this stuff. And so neither claim stands up. I didn't read the district court's judgment that way, or its order that way, and we include it in Volume 7 at page 2060 of Lines 14-14. The district court specifically said there may be triable issues of fact as to whether the city's actions advanced the public health, welfare, and safety, and simply never addressed the Mercy Charity Hospital issue as it related to the private takings claim. So I didn't see, number one, anything specifically addressed by the district court. And it baffled me that the court found that there may be issues of fact, but then proceeded to say that it was not right and it had to go forward in a State court proceeding. Which leads me to the other issue. I recognize I'm cognizant of the fact that this panel cannot override prior circuit authority, but it seems to me that this panel is not But it seems to me there's at least a tension, if not an intra-circuit conflict, between Sinclair Oil and the cases that cite Sinclair Oil and Garneau. And I've pointed that out in the briefs. And I just don't know how you square Garneau with Sinclair Oil that says that economic impact just doesn't come into it. Garneau, it seemed to me, was a facial takings claim. The court clearly asserted jurisdiction of the claim. And it talked about whether the regulation went too far based on economic impact and so forth. So it seems to me that cases that seem to cite Sinclair Oil are in direct conflict, or at least in very serious tension with Garneau. Notwithstanding that, it seems to me that this court's order was wrong, even if one accepts Sinclair Oil as the sole analytical framework. And the reason for that seems to me to be Sinclair Oil says itself there are two types of facial takings claim. One type of facial takings claim would be where you just say that the regulation in question does not substantially advance legitimate governmental interest. The other one where you say it just goes too far in the economic impact issue. If you take the substantially advancing legitimate governmental interest coupled with the district court's direct finding that there may be tribal issues of fact here to the effect that the city's action did not advance or was not furthering health welfare and public welfare, it seems to me that that portion of the facial takings claim should have gone forward. What is even more anomalous is I think kind of an interstitial posture in this case in that this case, the district court asserted jurisdiction over the pending or remaining supplemental state claims dealing with the writs. The writ of mandate under 1094.5, the Code of Civil Procedure, yet dismissed the inverse condemnation claim. What we've argued is those are two inextricably intertwined claims, because under State law, if you don't overturn the decision, there's a claim foreclosure rule that prevents you from going forward on the takings claim. I'm going to ask you something, Mr. Patel. Does it matter, given what the district court held with respect to the writ of mandate claims? I certainly thought about that question, Your Honor, and I hope I addressed it in the briefs sufficiently. But it seems to me that the two claims are not coextensive. It seems to me that you can't have the one without the other, can you? I mean, you cannot have an inverse condemnation claim that succeeds unless you've gotten rid of the offending regulation. Oh, I totally agree with you. If you found that the offending regulation isn't offending and it's still in place, then there's no inverse condemnation claim to be dealt with, is there? No. I totally agree with the Court on that, and I conceded that. Why does it matter? It matters because what we've argued is that a Fifth Amendment takings claim under the Federal Constitution is not coextensive with the framework that California law works. California law applies, number one, a claim preclusion rule. It says that, in fact, if you can't overturn the regulation, you're simply precluded to assert or go forward on the claim. Certainly, the law of this circuit, as I understand Weinberg v. Whatcom County and Honey v. Distelrath, is that an administrative proceeding is a special proceeding. Administrative verdict is a special proceeding. No claim preclusion applies. So that's number one. Number two, under 1094.5, you're not entitled to a jury trial on the issue of a factual nexus between the legitimate governmental interest, asserted legitimate governmental interest, and how the city tied that together in their actions. Certainly, under City of Monterey Dunes case, under that framework, there's a Seventh Amendment right for a determination of the underlying facts. Now, I recognize Buckles has limited that. But what Buckles specifically said was that's a case in Buckles where they were following their own ordinances, whereas in City of Monterey Dunes, they were saying, would not follow. The claim was they were not following their ordinance, which is precisely the issue here. So it seems to me one eviscerates all the guarantees of a taking claim, a Federal taking claim, if one just says, okay, you've lost under California law, and now that's it under Federal law. And I don't read the cases that way. If there are no further questions, I will reserve them. Thank you. Mr. Johnson. Good morning. May it please the Court. Moses Johnson, Deputy City Attorney on behalf of Defendant and Respondent Party of the City of Anaheim. I will just respond to the points that counsel raised regarding the taking. This Court just ruled less than a month ago in the Oakland case where Mr. Weiser represented the appellant that cities have a right to regulate hotels and motels and make sure that they're clean and sanitary and don't adversely affect public health and safety. The district court found here that the city council had an overwhelming record that the reason that they denied these applications was because the patels refused to run their motel in a legitimate manner and that, therefore, more than substantial evidence to deny the rent. So there wasn't an illegitimate motive. There was just this coincidence that counsel has pointed out factually as to that someone made an offer to buy at the same time the city was doing things to his clients. But that record goes years back. It goes all the way back to 1995. So I think what the district court was finding here is there wasn't enough there for this case to even go to a jury on an illegitimate motive and, therefore, summary judgment was properly granted on the taking claim. And there is claim preclusion even on a Fifth Amendment taking claim. Counsel cites to the Honey case in his brief, which also cites to the California Supreme Court case of MATA, and MATA held that you can have claim preclusion. So whether it's an inverse claim in state court or it's a takings in federal court, there still can be claims preclusion. And after the court denied the rent, there just can't be a taking claim or an inverse claim. You have to win on the rent. And why do you have to win on the rent? You have to give the city a chance to change its mind if it loses on a rent. And if the regulation isn't overturned, you just can't have a taking or inverse claim. And this court held both in Oakland and Buckles these issues can be resolved on summary judgment. Del Monte Dunes in no way, they rejected a broad reading of that, that you have to have a jury trial on these questions of fact. So, I mean, there's two Ninth Circuit decisions right on point that says the court can resolve these issues by summary judgment. But the district court was, I think, disappointed that I originally didn't try to resolve the writ by summary judgment. I, at that point, was only trying to knock it out on a statute of limitations theory. And we ended up having our trial on the writ. And actually, I'm glad we did because the court has the full administrative record in front of it. If the court wants to look at the writ issue, the court has to find that there isn't substantial evidence for the city council doing what it did. And the city council's resolution's in the record. Normally, these reviews are highly deferential. It isn't that this court would come to a different decision, but this court would find that there's no evidence, basically, for why the council did what it did. And with the record that we have here of all the code violations, the criminal problems there, I mean, there was overwhelming evidence for the city to say, no, you shouldn't be in business. All the city wanted was compliance. Live according to the city codes. Live according to your conditions. But apparently, this owner didn't want to do that. And that's when the city has the right to say, no, we're not going to give you a permit. So that's basically it, unless you have any questions.  I don't think so. Mr. O'Rourke, do you have anything you want to add? Well, I should know a little bit about the Oakland case. I litigated it. I don't read Judge McKeon's opinion the same way the council reads it. Judge McKeon was — first of all, we were dealing there with an ordinance of general applicability. We were not dealing with a regulation which was based on specific factual findings where there was litigation between the parties. And what Judge McKeon indicated was, in extending the Buckles decision, was merely — I don't know if you can see it on his face, but Judge McKeon was not extending it to a 12b6 setting in all situations, but was merely saying that taking an ordinance of general applicability where there are no due procedurations, Judge McKeon found there was no taking at all because nothing had changed as far as the legal status of the hotel and hotel owners there in Oakland, that the legislative findings could be given some kind of presumption correctness on the face of the ordinance, and then found that one could then find that there was substantially advancement of legitimate governmental interest. That's clearly not what we have here. What we have here is, number one, a summary judgment motion. As I said, there are disputed facts. I understand counsel's characterization of the city's position, but this was a three-to-two decision. Councilmember Kring, Councilmember Tate clearly supported the Battelles, felt that there were — seemed to be some wide disparities on the interpretation of the facts. And how the motels were being applied on the West End, other motels. The facts that were introduced at this administrative hearing were clearly in dispute, whether, in fact, these alleged violations go back years back, and what was the position in the year 2000, a question about the sufficiency of the evidence, all those things. Excuse me, Mr. Weiser. Isn't Mr. Johnson correct when he tells us that the review is pretty deferential, and given the fact that the district court had the entire record of the proceedings before the city council and the planning department and so on before it, does the district court have to sit and de novo review and resolve all those factual determinations? Or can it simply say, look, the council heard all this evidence. Yes, it was a split decision three-to-two, but I'm satisfied that there is sufficient evidence in the record to support the decision that the majority reached. And on a deferential review standard, that's good enough. Several answers to that, or several responses to that, Your Honor. Number one, I don't believe the district court had the full record in the sense I think it's clear from that prior administrative record going back to 96 and 97 was lost by the city, or at least portions of the record were lost by the city. This is where the whole dispute comes up, that after the 97 denial, there was a Public Records Act request by the Patels. Okay. But he found you were time-barred on the conditional use permit with regard to the prior period, didn't he? No. He didn't find it time-barred. In fact, the judge specifically found it. Oh, lashes.  And so that was where we got in. So why is that relevant? If the district court is correct that your client was guilty of lashes, isn't the record that I understand it was before him was with regard to the year 2000 conditional use permit? That's right. It was the 2000. Well, our position is that if lashes doesn't apply, then the whole issue comes into play again. But irrespective of that, under State laws, and we argue it's an independent judgment test, of course, the district court rejected that. The question, though, is what are the guarantees under Federal law? It doesn't seem to me that you have a purely coextensive standard. I would think that under a 1983 action, as I read City of Monterey, is there is not any presumption of correctness on factual findings. In fact, we cited the Patsy case where the Supreme Court has clearly said the whole point of the guarantees under 1983 is administrative findings are not given a presumption of correctness. And that a 1983 action does bring up a de novo review. So I don't see the deferential standards that the district court used in adjudicating the State. But your argument is a due process argument, is it not? So the first thing that the district court has to do in the context of a 1983 action is to determine what processes do. And presumably that requires an analysis of California law and the ordinances of the City of Anaheim and then decide on the basis of the record before it whether your client was, in fact, accorded the process established by local law. Once it satisfies itself that your client got due process, isn't that the extent of the district court's analysis under the due process? Our argument is, with all due respect, Your Honor, exactly the opposite. We feel that California law does not accord the sufficient due process guarantees under the Seventh Amendment, number one, because there is a right to having a jury decide if, in fact, there are tribal issues of the reasonable nexus between the City's actions and whether there was a legitimate governmental interest. And what's your best case for that proposition? The City of Monterey case. And once again, 1094.5 says directly on its face that it's to be adjudicated by a judge, not a jury, which is how all administrative writs work. So our argument is there is not sufficient due process under State law. Second of all, our argument is also the modern case that counsel cites, I believe, is mischaracterized. Weinberg v. Whatcom County clearly, as I read it, states clearly on its face no plain conclusion applies. And, in fact, the Mata case, which is the Honey v. Distal Wrap case, that Mata all that Weinberg also cites for its authority, was a collateral estoppel or an issue-conclusion issue, not a claim-conclusion issue. So I don't read Mata, and I certainly don't read this Circuit's authority to the same in the same way the counsel does. Finally, the odd thing is, is that if this case had proceeded on both the writs and the inverse condemnation claim in State court, I could have filed an England reservation, which would then have allowed me to come back into Federal court. And I believe I cited the Ivy Club Edwards case, Ivy League v. Club Edwards, a Third Circuit case. I am not denying there's got to be some issue preclusion given. The question is how do you balance the full faith and credit clause issues with the right to come back into a Federal court. And Ivy, I think, it's proper balance. It says we give preclusion to the State law questions that are decided, but we allow the Federal claim to go forward and a Federal fact finder on the underlying claims. In this case, though, I think there's one more compelling reason. The State fact finder was a judge, not a jury. And if the court, if the district court found that there were potentially material tribal issues on this nexus of whether it advanced the public health, safety and welfare, I think we have a right to a jury on that. With that, I would speak. All right. Thank you very much, Counsel. The matter just argued will be submitted. And that concludes our calendar for today. I will say for the benefit of our visitors that you've just heard argument in these matters, all of which have gone through a process where they were resolved. What we will now do is go back and have a private discussion about the issues that are identified and how we will resolve those issues. And at some point within the next few weeks, we will issue a written decision which says what we have decided and explains why we have decided it that way. And that's how the appeals process works. And today's session is in recess. All rise.
judges: Rymer, Tallman, Leighton